# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS E. OTT, JR,**

                **Plaintiff,**

      **v.**                                **Case No. 14-CV-556**

**H & M HENNES & MAURITZ, LP,**

                **Defendant.**

## DECISION AND ORDER

### I.    Facts and Procedural History

In April 2007, defendant H&M Hennes & Mauritz LP (H&M) hired plaintiff Thomas E. Ott, Jr. as a part-time sales associate at H&M's Bayshore Mall retail store in Glendale, Wisconsin. (ECF No. 24, ¶ 1.) Ott is legally deaf. (ECF No. 25, ¶ 5.) At the time H&M hired Ott, he explained that he is able to communicate by lip-reading and speaking. (ECF No. 25, ¶ 23.) By reading lips he is able to understand 50 to 75 percent of what someone is saying, although a variety of factors (including a clear view of the speaker's lips, the speed at which the speaker is speaking, and whether there are multiple speakers) can impact his comprehension. (ECF No. 25, ¶ 23.)

In addition to ten-minute meetings at the beginning and end of each day, which involved four to eight staff members (ECF No. 24, ¶¶ 17-18), H&M conducted longer all-staff meetings on a quarterly basis. (ECF No. 24, ¶ 19.) These quarterly meetings included revisiting store policies, discussing areas of day-to-day business that needed more focus, and referring to upcoming promotions. (ECF No. 24, ¶ 21.) Ott had difficulty understanding speakers during these quarterly meetings because he could not see the speaker clearly, especially if the speaker was walking around the store and talking at the same time. (ECF No. 24, ¶ 28.) He provided multiple managers with contact information for sign language interpreters to help him better communicate during the group meetings. (ECF No. 24, ¶ 30.) At no point did H&M ever provide Ott with a sign language interpreter. (ECF No. 24, ¶ 31.) Rather, Ott was periodically provided with written notes from the meetings. (ECF No. 24, ¶ 32.)

On more than two dozen occasions beginning the week his employment started and continuing throughout his four-and-a-half years with H&M, Ott was "documented" (written-up) or issued a "corrective action" for a variety of reasons. (ECF No. 20, ¶¶ 39-82.) He was written-up approximately a dozen times for being late for work. (ECF No. 25, ¶¶ 58, 62, 68, 70, 71, 73, 75, 76, 79, 81, 82.) Several other write-ups related to Ott cursing or using inappropriate language in reference to other employees (ECF No. 25, ¶¶ 48, 65, 66, 77), asking other employees inappropriate questions, such as what they liked sexually (ECF No. 25, ¶ 47) or whether they would give him money

2

(ECF No. 25, ¶ 54), and for writing "lame hours" on the posted work schedule (ECF No. 25, ¶ 60). Ott contends that some of the write-ups were for violations of store policies that he did not understand because they were explained at the quarterly meetings. (ECF No. 24, ¶¶ 37-39.)

On September 19, 2011, Ott observed some customers that he thought were shoplifting in the H&M store. (ECF No. 24, ¶ 45.) He informed Roberta Moser, acting store manager of H&M's Bayshore store (ECF No. 24, ¶ 6), and Kelly Sheahan, a department manager at the Bayshore store (ECF No. 24, ¶ 7). (ECF No. 24, ¶ 49.) Moser told him to "customer service" the suspected shoplifters (ECF No. 24, ¶ 50), a practice consistent with H&M's shoplifting policies that involved asking the suspected shoplifters if they are finding everything, cleaning in the general vicinity of the suspects, walking them into the fitting room with the number of garments they were taking in, and checking their garments back out of the fitting room (ECF No. 24, ¶ 13). Moser then left the sales floor and Sheahan went to lunch. (ECF No. 24, ¶ 51.) Moser did not call mall security, although that was routinely done. (ECF No. 24, ¶ 52-53.)

Left alone with the shoplifters, Ott was afraid for his safety. (ECF No. 24, ¶ 55.) The shoplifters then left the store. (ECF No. 24, ¶ 59.) Ott was very upset that Sheahan and Moser had not done anything to apprehend the shoplifters. (ECF No. 24, ¶ 62.) He finished working the remaining minutes of his shift and clocked out. (ECF No. 24, ¶ 64.) He then confronted Sheahan about not helping him with the shoplifters. (ECF No. 24,

¶¶ 67-68.) Sheahan eventually pulled Moser into the conversation. (ECF No. 24, ¶ 69.)

According to Ott, he stated to Moser and Sheahan,

> Screw that. This is bullshit. I'm not going to deal with shoplifting anymore. I would rather work on my project and that's it. And if you see shoplifters in the store next time and you leave me alone with no manager, I'm not going to do that anymore. I'm just going to go on the first floor with some co-workers where I'm comfortable and safe and sound.

(ECF No. 24, ¶ 71.) In a report about the confrontation Sheahan wrote that Ott said, "Fuck both of you" and "I quit" and then left the store. (ECF No. 25, ¶ 92.) Moser wrote in a report of the incident that Ott said, "Fuck you, I quit" and then left the store. (ECF No. 25, ¶ 93.)

Ott disputes that he ever said he quit. (ECF Nos. 24, ¶ 72; 27-2 at 35.) He admits that he was "fed up" (ECF No. 24, ¶ 82) but says he left the store only because Sheahan and Moser told him to "get out." (ECF No. 24, ¶ 81). At some point during this forty-five-minute confrontation (ECF No. 24, ¶ 86), Ott requested an interpreter (ECF No. 24, ¶ 80). Instead of getting an interpreter, Sheahan and Moser "simply kept arguing with [Ott]." (ECF No. 24, ¶ 80.)

Ott returned to the store a few days later on his next scheduled workday. (ECF No. 24, ¶ 89.) Management asked him why he was there because according to the reports he had quit. (ECF No. 24, ¶¶ 90-92.) Ott became very upset, yelling and claiming "that Moser and Sheahan had conspired against him and had made up the story about him quitting." (ECF No. 24, ¶¶ 92-93.) Ott asked for a sign language interpreter during

this meeting but was told there was not sufficient time to obtain one. (ECF No. 24, ¶ 94.) On September 22, 2011, H&M completed a Termination Form stating that Ott quit his position by verbally stating he quit and walking out of the store. (ECF No. 25, ¶ 104; 27-1 at 17, 18, 19 (all citations to ECF documents herein utilize the ECF pagination).)

Ott filed a charge of discrimination with the Wisconsin Department of Workforce Development, Equal Rights Division on March 8, 2012. (ECF No. 1, ¶ 8.) The Equal Employment Opportunities Commission issued Ott a "Notice of a Right to Sue" on March 4, 2014. (ECF No. 1, ¶ 8.) Ott filed this lawsuit a little over a week later. (ECF No. 1.)

In his complaint, Ott asserts three claims under the Americans with Disabilities Act (ADA). First, he contends that H&M failed to reasonably accommodate his disability, leading to H&M treating him discriminatorily with respect to compensation and promotions. (ECF No. 1, ¶¶ 28-30.) As to this claim, he alleges that H&M's failure to accommodate his disability was a cause of his termination. (ECF No. 1, ¶ 31.) Next, Ott contends that he suffered discrimination in the form of poor evaluations, lower pay increases, discipline, ridicule, and humiliation as a result of his disability. (ECF No. 1, ¶¶ 33-34.) As to this second claim, he alleges that his termination was the result of discrimination due to his disability. (ECF No. 1, ¶ 35.) Finally, Ott alleges that he suffered retaliation for requesting reasonable accommodations for his disability and for

alleging that he suffered discrimination as a result of his disability. (ECF No. 1, ¶¶ 37-39.)

All parties consented to the full jurisdiction of a magistrate judge. (ECF Nos. 15, 16.) The court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under a federal statute, specifically the Americans with Disabilities Act, 42 U.S.C. § 12112. Venue is proper under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in this district. H&M has moved for summary judgment, and the motion is now ready for resolution.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit" and a dispute is "genuine" only if a reasonable finder of fact could accept the non-moving party's position and return a verdict in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In resolving a motion for summary judgment, the court is to "construe all evidence and draw all reasonable inferences from that evidence in" favor of the non-movant. *E.Y. v. United States*, 758 F.3d 861, 863 (7th Cir. 2014) (citing *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir. 2008)); *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001). The "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a

factfinder." *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003)). "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012) (quoting *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 690-91 (7th Cir. 2010)).

## III.   Analysis

### A.   Facts Considered by the Court

The parties' summary judgment filings presented a variety of procedural issues. Ott sought to file a sur-reply to address some of those matters. (ECF No. 30.) The court denied that motion in part because Ott failed to explain why he waited a month after the defendant's reply before filing it but, more importantly, because the court had already identified the matters Ott sought to present.

H&M argues that Ott's response was untimely and asks that the court deem all of its proposed findings of fact admitted. (ECF No. 29 at 4-5.) H&M filed its motion for summary judgment on July 1, 2015. (ECF No. 21.) Ott had 30 days in which to respond, Civ. L.R. 56(b)(2), and H&M contends that Ott's brief was three days late when it was filed on August 3, 2015. (ECF No. 29 at 4-5.) However, under Rule 6(d) of the Federal Rules of Civil Procedure, "[w]hen a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after

the period would otherwise expire under Rule 6(a)." Service through the court's Electronic Court Filing (ECF) system is covered by Rule 5(b)(2)(E). Because three days were added to the 30-day deadline set forth in Civil Local Rule 56(b)(2), Ott's response on August 3, 2015, was timely.

H&M also asks that the court disregard an affidavit from Ott submitted in response to H&M's motion. H&M first claims that the court should strike the affidavit because Ott submitted it after the discovery deadline. (ECF No. 29 at 2.) The court finds no basis to strike the affidavit merely because it was submitted after the discovery deadline. An affidavit in support of or in opposition to a motion for summary judgment is explicitly permitted. *See* Fed. R. Civ. P. 56(c)(4). Ott's affidavit was timely submitted at the same time as his summary judgment response.

However, it is well-established that a party may not defeat a motion for summary judgment by submitting an affidavit that contradicts the witness's prior testimony and then asserting that a factual dispute exists. *See United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars*, 403 F.3d 448, 466 (7th Cir. 2005) (citing *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996)). H&M points to one paragraph in Ott's affidavit that it contends contradicts Ott's deposition testimony relating to his difficulty reading lips in "complex" communications. (ECF No. 29 at 3.) Construing the evidence in favor of Ott, the affidavit does not contradict his deposition testimony.

H&M also alleges that, "even though he was questioned about his requests for an interpreter," Ott never said during his deposition or at any time during discovery that he provided multiple managers with contact information for a sign language service so that interpreters could be provided for group meetings. (ECF No. 29 at 4.) But H&M does not provide the court with enough information about what specifically Ott was asked during discovery, and what testimony he gave, regarding "his requests for an interpreter." Without that information, the court has no basis for concluding that Ott's affidavit contradicts his prior testimony and thus is a sham.

H&M also challenges a paragraph in Ott's affidavit on the basis of hearsay. The paragraph states that an employee who called him "deaf and stupid" was not disciplined. (ECF No. 29 at 4.) But it is not clear that the statement is hearsay; it may have been based upon Ott's personal knowledge. In any event, an isolated hearsay statement would generally merit striking only that statement, not the entire affidavit. *See Simpson v. Wayne County*, 2014 U.S. Dist. LEXIS 164036, 3 (S.D. Ill. Nov. 24, 2014) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009)) ("In considering a motion to strike, the Court must 'use a scalpel, not a butcher knife' and only strike portions that are inadmissible under Fed. R. Civ. P. 56(c)(4) rather than strike an affidavit in its entirety."). The most appropriate response would appear to be for H&M to object to any proposed finding of fact that Ott submitted based upon the subject statement.

The court will, however, deem admitted all of the additional proposed findings of fact that Ott submitted in response to H&M's motion. (ECF No. 24.) H&M did not respond to these additional proposed findings of fact under Civil Local Rule 56(b)(3)(B). Therefore, under Civil Local Rule 56(b)(4), each of Ott's additional proposed findings of fact is admitted for the purpose of deciding the present motion. *See also* Fed. R. Civ. P. 56(e)(2). That includes the finding "Ott never stated that he quit." (ECF No. 24, ¶ 72.)

This entire discussion should have been unnecessary; parties are expected to know and comply with the court's procedural rules. But given that the court already had to needlessly devote a few paragraphs to a discussion of procedural rules, it might as well comment on a few other such matters. This court's Electronic Case Filing Policies and Procedures Manual requires that "[d]ocuments must be converted to PDF directly from the filer's word processing software rather than scanned. Documents must be submitted in text searchable format, whenever possible." Electronic Case Filing Policies and Procedures Manual, sec. I. A.; II. A. 2. (E.D. Wis., Feb. 13, 2015) available at http://www.wied.uscourts.gov/index.php?option=com_docman&task=doc_download& gid=122&Itemid=30. H&M improperly filed scanned documents with the court. If its concern was scrubbing documents of metadata before filing, there are effective means of accomplishing that short of not complying with the court's policies and procedures.

This court also does not require separate certificates of service for documents that are electronically filed. Civ. L.R. 5. Although it is not technically error to file one, as the

parties did here (ECF No. 23; ECF No. 29 at 14), it is unnecessary to file individual certificates for each document filed at the same time, and it is most certainly unnecessary to file two certificates for the same document (*see* ECF No. 20 at 1, 21; ECF No. 21 at 1, 4; ECF No. 22 at 1, 23).

Lest H&M think the court is picking on it, a few comments on Ott's filings. This court's General Local Rule 5(a)(5)(A) requires that any proportional font used in a pleading or other paper include serifs. Ott's documents submitted in response to the motion for summary judgment impermissibly use a sanserif proportional typeface. Aside from headings and captions, the Arial typeface used on most word processing programs and similar sanserif proportional typefaces are not appropriate for documents filed in this court.

And one final note regarding the presentation of briefs: spellcheck is no substitute for proofreading. Spellcheck ensures that what is written is an English word; it does not check for whether it is the word the writer intended. Here is an example of a particularly egregious sentence from Ott's brief:

> Where [sic] a sales association [sic] suspects a shoplifter they are required to notify a manager and the manger [sic] would have to observe the customer enter the department, witness the customer select a garment item, witness them conceal the garment, maintain eye contact throughout the entire rest of the person's visit, and then seem [sic] them exit past the final point of sale while maintaining possession of the merchandise.

(ECF No. 28 at 4.) Although an occasional typo will slip by even attentive writers, frequent errors are a disservice to the court and, more importantly, to the client.

11

**B. Failure to Accommodate**

The ADA requires that employers make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an … employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. § 12112(b)(5)(A). A reasonable accommodation may include

> making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and…job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). To establish a *prima facie* case for failure to accommodate under the ADA, a plaintiff must show that (1) he is a qualified individual with a disability, (2) his employer was aware of his disability, and (3) his employer failed to reasonably accommodate his disability. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013).

There is no dispute that Ott is a qualified individual with a disability and that H&M knew of his disability. (ECF No. 22 at 9.) The question is whether he sustained his initial burden to show that H&M failed to reasonably accommodate his disability. (ECF No. 22 at 9 (citing *Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th & 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010)).) Ott contends that H&M did not reasonably

accommodate his disability when it (1) failed to provide him with a sign language interpreter for quarterly store meetings, (2) failed to provide him with a sign language interpreter during the September 19th confrontation with Moser and Sheahan, (3) failed to provide him with a sign language interpreter during the September 21st meeting with store managers, and (4) required him to carry a walkie-talkie. (ECF No. 28 at 15-22.)

    1.    *Quarterly Store Meetings*

According to Ott, "Ott utilized sign language interpreters to help him better communicate in the past. While employed at H&M, he provided multiple managers with contact information for that service, so that such interpreters could be provided for the group meetings." (ECF No. 24, ¶ 30.) One reasonable reading of this statement is that at some point Ott informed H&M about the availability of interpreters and, armed with that information, it was possible for H&M to arrange for a sign-language interpreter to be at the quarterly meetings. An alternative reading of this sentence is that Ott specifically told the store managers that the *reason* he was providing them with contact information of interpreters was so that an interpreter could be provided for the quarterly meetings. In light of this court's obligation to construe all matters in the light most favorable to Ott, *E.Y.*, 758 F.3d at 863, the court accepts the latter interpretation for purposes of this motion.

But an employer is not liable under the ADA merely because it failed to provide a disabled employee with the specific accommodation that the employee requested. The accommodation requested must have been reasonable, and the absence of the accommodation must have resulted in an adverse employment action, *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1032 (7th Cir. 1999); *see also Saladino v. Envirovac, Inc.*, 167 Fed. Appx. 559 (7th Cir. 2006) (relying upon *Foster*); *Sluga v. Metamora Tel. Co.*, 2015 U.S. Dist. LEXIS 50671, 14-15 (C.D. Ill. Apr. 17, 2015) (same); *Mendez v. City of Chicago*, 2004 U.S. Dist. LEXIS 25951, 20 (N.D. Ill. Dec. 20, 2004) (same); *Saladino v. Envirovac, Inc.*, 2004 U.S. Dist. LEXIS 20855, 31 (N.D. Ill. Oct. 12, 2004) (same); *Heimann v. Roadway Express, Inc.*, 228 F. Supp. 2d 886, 897 (N.D. Ill. 2002) (same); *Byrne v. Avon Prods.*, 2002 U.S. Dist. LEXIS 9252, 13 (N.D. Ill. May 22, 2002) (same), or other injury to the employee, *see*, e.g., *Gile v. United Airlines, Inc.*, 213 F.3d 365, 370 (7th Cir. 2000) (noting employer's failure to provide employee with reasonable accommodation of a position on the day shift exacerbated and prolonged employee's depression and delayed her return to work); *Nawrot v. CPC Int'l*, 259 F. Supp. 2d 716, 724 (N.D. Ill. 2003) (noting employer's failure to provide diabetic employee with breaks to monitor his diabetes led to instances of plaintiff losing consciousness and otherwise imperiled health).

Under circumstances similar to those here, courts have recognized that an interpreter is a reasonable accommodation. *See Noll v. IBM*, 787 F.3d 89, 98 (2d Cir. 2015); *Keith v. County of Oakland*, 703 F.3d 918, 928 (6th Cir. 2013) (citing *EEOC v. UPS*

*Supply Chain Solutions*, 620 F.3d 1103, 1111-13 (9th Cir. 2010); *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 364-70 (4th Cir. 2008); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1246 (10th Cir. 1999)). Thus, a reasonable finder of fact could find that providing Ott with an interpreter for the quarterly meetings was a reasonable accommodation.

However, there is no evidence that the absence of an interpreter at the quarterly meetings resulted in Ott suffering an adverse employment action or other injury. As noted above, Ott had a lengthy disciplinary history at H&M. (ECF No. 25, ¶¶ 39-82.) Ott identified only three examples of instances where H&M disciplined him for violating H&M policies. (ECF No. 28 at 8.) But he has not presented any evidence connecting his violation of an H&M policy to the absence of an interpreter at a quarterly meeting. Stated another way, to prevail on his failure-to-accommodate claim with respect to the absence of an interpreter at quarterly meetings, Ott would have to prove that a policy was presented at a quarterly meeting; that he did not understand the policy; that his failure to understand was attributable to the absence of an interpreter at the quarterly meeting; and, finally, that he was disciplined for violating the policy. Ott has failed to identify any instance where H&M disciplined him for violating a policy that was explained only at a quarterly meeting. In fact, he expressly states that store policies were only "revisited" at quarterly meetings rather than introduced for the first and only time at quarterly meetings. (ECF Nos. 24, ¶ 21; 25, ¶ 90; 28 at 6.) As a result, the absence of an interpreter at quarterly meetings does not explain any alleged failure to

understand a store policy, and any discipline he received for violating store policies was not the result of an absence of an interpreter.

Because Ott has failed to present evidence that the absence of an interpreter at quarterly meetings resulted in an adverse employment action or other injury, H&M is entitled to summary judgment as to this aspect of Ott's claim.

### 2. September 19, 2011, Meeting

Ott contends that the September 19, 2011 "meeting stemmed from Ott's desire to discuss the appropriate way to handle shoplifters in light of [his] disability." (ECF No. 28 at 21.) He asserts that he requested an interpreter so that he, as a deaf employee, could "feel secure in his responsibilities with regard to shoplifters in the store." (ECF No. 28 at 22.) H&M contends it was not required to provide Ott with an interpreter at this meeting because confronting shoplifters was not an essential part of Ott's job. (ECF No. 29 at 8-9.)

It is undisputed that Ott's managers told him to "customer service" the suspected shoplifters (ECF No. 24, ¶ 50), and thus the court must accept that interacting with shoplifters, on some level, was an essential part of Ott's job. And, according to Ott, it was the directive that he interact with the shoplifters that gave rise to his safety concern and his need to discuss that concern with his managers.

As for whether calling in an interpreter was a reasonable accommodation, the provision of an interpreter is explicitly recognized as the sort of accommodation that

16

may be appropriate under the ADA. 42 U.S.C. § 12111(9). Moreover, H&M does not argue that it was not a reasonable accommodation. Therefore, for the purposes of summary judgment, the court accepts that an interpreter would have been a reasonable accommodation.

Finally, a reasonable finder of fact could conclude that Ott was injured by the absence of an interpreter on September 19, 2011. The court must accept Ott's statement that he never said that he quit during this meeting. (ECF No. 24, ¶ 72.) When Ott gets upset, as he undisputedly was during this confrontation, he can be harder to understand. (ECF No. 24, ¶ 73.) Although the managers believed that Ott said he quit (ECF No. 24, ¶ 88), had an interpreter been called in for the discussion a reasonable jury could conclude that the managers would not have misunderstood Ott as having said he quit.

Therefore, in light of the evidence that the court must accept as true for purposes of summary judgment, a reasonable finder of fact could conclude that Ott's request for an interpreter under these circumstances was a request for a reasonable accommodation under the ADA. When H&M refused to provide him with one, it led to a misunderstanding whereby Ott was injured as a result of his managers mistakenly believing he had quit. Consequently, the court must deny H&M's motion for summary judgment with respect to this aspect of Ott's complaint.

### 3. September 21, 2011, Meeting

As a preliminary matter, the court notes there are immaterial discrepancies regarding the date of this meeting; Ott states it was on September 21, 2011 (ECF No. 24, ¶ 89), while H&M states it was on September 22, 2011 (ECF No. 25, ¶ 101). Ott's termination paperwork is dated September 22, 2011. (ECF No. 20-3 at 42-45; ECF No. 24, ¶¶ 96, 97; ECF No. 25, ¶ 102; ECF No. 27-1 at 19.)) The court will use Ott's September 21, 2011 date.

Ott argues in a heading of his brief that he was denied the reasonable accommodation of an interpreter when he returned to the store on September 21, 2011. (ECF No. 28 at 20.) However, in the argument that follows he devotes not one word to a discussion of the September 21st meeting, his request for an interpreter, or how that request was a request for a reasonable accommodation. (ECF No. 28 at 20-22.) His failure to develop this argument is reason enough to grant H&M's motion for summary judgment with respect to this claim.

Nonetheless, the claim also fails upon its merits. As stated above, it is admitted for purposes of summary judgment that Ott requested and was denied an interpreter during this meeting. (ECF No. 24, ¶ 94.) However, Ott offers no authority suggesting that locating and hiring an interpreter for the September 21st conversation was a reasonable accommodation in that it was necessary for him to perform an essential function of his job.

Because there is no evidence that communicating during the September 21, 2011 meeting was an essential function of Ott's job, H&M did not violate the ADA when it denied his request for an interpreter at the meeting. *See Thomas v. Avis Rent a Car*, 408 Fed. Appx. 145, 153 (10th Cir. 2011) (unpublished) (finding that an employer did not violate the ADA when it did not provide a deaf employee a sign language interpreter during a termination meeting); *Novella v. Wal-Mart Stores, Inc.*, 226 Fed. Appx. 901, 903 (11th Cir. 2007) (unpublished) (holding that communication at a termination meeting was not an "essential function" of the employee's job and thus employer did not violate the ADA by failing to provide a deaf employee a sign language interpreter for a termination meeting); *cf. Payton v. Jewel Food Stores, Inc.*, 2015 U.S. Dist. LEXIS 107084, 17-19 (N.D. Ill. Aug. 14, 2015) (finding that employer was not required to provide an interpreter at a disciplinary meeting and subsequent termination meeting because, in light of employee's undisputed violations of company policies, employee failed to show he was a qualified individual).

H&M is entitled to summary judgment on this aspect of Ott's claim.

### 4. *Walkie-Talkie*

Ott initially states in his supplemental proposed findings of fact that, "[a]lthough there are no written policy [sic] about carrying walkie-talkies, both managers and sales associates are encouraged to carry the walkie-talkies with them at all times." (ECF No. 24, ¶ 16.) Ott subsequently claims that he was *required* to carry a walkie-talkie. (ECF No.

28 at 22; ECF No. 24, ¶ 42.) He says he was "considerably embarrassed" by having to use a walkie-talkie since customers and other employees "could see that he was unable to use it." (ECF No. 24, ¶ 43.)

Ott contends that H&M should have accommodated his disability by excusing him from carrying a walkie-talkie. (ECF No. 28 at 22.) However, Ott has not presented any authority suggesting that the ADA requires an employer to provide an accommodation to enable a disabled employee to avoid potential minor embarrassment. But leaving aside the question of whether the ADA requires accommodations merely intended to help an employee avoid embarrassment, Ott's claim fails for a different reason.

Accommodating a disability is intended to be a collaborative process between the employer and employee. *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055 (7th Cir. 2014); *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 333 (7th Cir. 2004). "[T]he purpose of the interactive process is to 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005) (quoting 29 C.F.R. § 1630.2(o)(3)). Ott claims that he complained in writing to H&M about having to carry a walkie-talkie. (ECF No. 28 at 22.) In support of that claim, the only evidence he points to is a "Documentation Form" he apparently filled out regarding a fellow sales associate named "Emily" and her failure to respond to his request for assistance via a walkie-

talkie in September 2009. (ECF No. 28 at 22 (discussing ECF No. 20-2 at 7).) On the Documentation Form Ott stated in relevant part, "9/29/09 I called Back up. She never came down. For 15 min with 5 people has Return And Im stuck making myself stupid. With walkie talk and deaf guy." (ECF No. 20-2 at 7 (quoted as written in original).) The statement continues for some length about "Emily" not promptly responding to Ott's request for assistance and for later "yelling" at him. (ECF No. 20-2 at 7.)

No reasonable finder of fact could conclude that Ott's passing reference to a walkie-talkie in a complaint about a co-worker was a request that, because of his disability, H&M excuse him from having to carry a walkie-talkie. *See Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 702 (7th Cir. 2014) (concluding that disabled employee's mother's reference to a job coach following disciplinary incident was not a "reasonable effort to help the other party decide what reasonable accommodations are necessary.") (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996).) In the absence of evidence that Ott ever requested H&M excuse him from carrying a walkie-talkie, H&M cannot be faulted for not excusing him from the requirement that he carry one. *See Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1092 (7th Cir. 2000) (holding that under the ADA an employer is not required to provide an accommodation absent a request from for an accommodation from the employee); *see also Reeves*, 759 F.3d at 702 (citing *Beck*, 75 F.3d at 1135) ("Where the employee does not provide sufficient

information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee.").

H&M is entitled to summary judgment on this aspect of Ott's claim.

### C. Discrimination and Discharge

The ADA prohibits an employer from discharging an individual from employment because of his disability. 42 U.S.C. § 12112(a). Absent direct evidence of discrimination, a plaintiff bears the burden of establishing a prima facie case by showing: (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job either with or without an accommodation, and (3) he suffered an adverse employment action on the basis of his disability. *Majors v. General Electric,* 714 F.3d 527, 533 (7th Cir. 2013).

Once a plaintiff demonstrates a prima facie case of discrimination under the ADA, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Nawrot v. CPC Int'l,* 277 F.3d 896, 905 (7th Cir. 2002). If the employer satisfies that burden, the burden shifts back to the employee to demonstrate that a discriminatory reason more likely motivated the action or that the employer's articulated reason for the employment action is a mere pretext of discrimination. *Id.*

In moving for summary judgment, H&M contends that Ott's discrimination claim fails because it took no adverse employment action against him; he quit. (ECF No.

22 at 18.) It goes on to argue that, even if Ott had not quit, any decision it made to terminate him "was based on his unruly behavior on September 19…." (ECF No. 22 at 19.) Thus, even assuming there was a misunderstanding regarding whether Ott actually quit that day, there is no evidence that his disability impacted H&M's decision in any way. (ECF No. 22 at 20.)

In response to H&M's motion for summary judgment, Ott argues that his "disability directly impacted his reaction to the shoplifting incident on September 19, 2011" (ECF No. 28 at 23), and that "Moser and Sheahan's claim that Ott 'quit' is a direct manifestation of Ott's disability." (ECF No. 28 at 24.) Thus, his "fear for his safety combined with his inability to communicate clearly about his concerns directly led to his termination." (ECF No. 28 at 24.) He further argues that H&M's explanation that he quit is merely a pretext. (ECF No. 28 at 24-29.) He contends that there is a genuine dispute of material fact as to how his employment ended and, thus, summary judgment is not appropriate on his discrimination claim. (ECF No. 28 at 25-27.)

H&M's contention that Ott must prove that he would not have been terminated *but for* his disability (ECF No. 22 at 17 (citing *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010))) is very much an open issue. The conduct at issue in *Serwatka* arose under a prior version of the ADA that prohibited discrimination "because of" a disability. *Serwatka*, 591 F.3d at 961-62. Congress amended the ADA in 2008 to now prohibit discrimination "on the basis of" a disability. *Silk v. Bd. of Trs.*, 795

F.3d 698, 705-06 (7th Cir. 2015); 42 U.S.C. § 12112(a). The Court of Appeals for the Seventh Circuit recently acknowledged that it remains an open question in this circuit whether the "but-for" standard remains applicable in light of the amendment of the ADA. *Id.* at 14.

Ott does not address the question of the standard the court must apply to his discrimination claim. In the absence of any contrary argument from Ott, the court will presume that the standard remains unchanged and that Ott must prove that his disability was a but-for cause of his termination. In any event, because there is no evidence that Ott's disability or a request for an accommodation had *any* role in his termination, Ott's claim would fail under any standard.

Although Ott disputes that he stated that he quit (ECF No. 24, ¶ 72), he concedes that both Moser and Sheahan *believed* he stated, "Fuck you, I quit." (ECF No. 24, ¶ 75; *see also* ECF No. 28 at 13.) An employer's decision is not deemed a pretext for discrimination merely because it turns out it was based upon a mistake. *See Green v. National Steel Corp.*, 197 F.3d 894, 899 (7th Cir. 1999). Provided it was based upon a good faith, honest belief, the court will not second-guess an employer's decision. *Id.; see also Pugh v. City of Attica*, 259 F.3d 619, 629 (7th Cir. 2001) (Courts "are not in a position to question the wisdom of a decision that was honestly made."); *Roberts v. Separators, Inc.*, 172 F.3d 448, 453 (7th Cir. 1999). "To successfully challenge the honesty of the company's reasons [the plaintiff] must specifically rebut those reasons." *Kariotis v.*

*Navistar Int'l Transp. Corp.*, 131 F.3d 672, 677 (7th Cir. 1997). This requires more than just questioning or criticizing the employer's decision. *Id.* Rather, the plaintiff must point to facts that tend to show that the employer's reasons were not just incorrect but dishonest. *Id.* (quoting *Gustovich v. AT&T Communications, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992)). Ott has made no effort to do so.

H&M is entitled to summary judgment on Ott's discrimination and discharge claim.

### D. Retaliation

The ADA protects employees from suffering retaliation for asserting their ADA rights. 42 U.S.C. § 12203(a). A plaintiff may offer direct or indirect proof of retaliation. *Cloe*, 712 F.3d at 1180. If the employee establishes a prima facie case of retaliation, the employer must then offer a legitimate, nondiscriminatory reason for its adverse action. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). The employee must then rebut that legitimate reason by showing that the employer's action was motivated by a discriminatory purpose. *Id*.

H&M argues that Ott's retaliation claim fails for the same reason his discrimination claim does: Ott voluntarily left his employment and, even if he did not, no evidence exists that his alleged termination had anything to do with his disability or in retaliation for accommodation requests. (ECF No. 22 at 21; ECF No. 29 at 12.)

Ott argues that he engaged in statutorily protected activity on September 19th by requesting an accommodation that would allow him to understand the conversation with his managers regarding the shoplifting incident that had just occurred. He contends that "Moser and Sheahan were tired of dealing with Ott's disability which culminated in them terminating his employment[.]" (ECF No. 28 at 29-30.) He claims to have demonstrated a prima facie case of retaliation because of his request for accommodations. (ECF No. 28 at 31.)

As stated above, Ott concedes that Moser and Sheahan understood Ott to say on September 19th that he quit. (ECF No. 24, ¶ 75; *see also* ECF No. 28 at 13.) Although he now disputes that he said he quit, given his admission that they believed he quit, no basis exists upon which a jury could conclude that Moser and Sheahan terminated Ott in retaliation for his having requested an accommodation for his disability. Therefore, H&M is entitled to summary judgment on Ott's retaliation claim.

**IT IS THEREFORE ORDERED** that the motion for summary judgment (ECF No. 21) filed by defendant H & M Hennes & Mauritz LP is **granted in part**. Summary judgment is denied with respect to Ott's claim that H&M violated the American's with Disabilities Act when it failed to provide Ott with an interpreter during the September 19, 2011 confrontation but granted on all other claims.

The court will conduct a telephonic scheduling conference on **November 4, 2015**

at **9:00 AM**. The parties shall call the court's conference line at 888-278-0296 and use

access code 8322317# to join the call.

Dated at Milwaukee, Wisconsin this 22nd day of October, 2015.

_WILLIAM E. DUFFIN_
WILLIAM E. DUFFIN
U.S. Magistrate Judge