UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

THOMAS E. OTT, JR,

        Plaintiff,

v.                                       Case No. 14-CV-556

H & M HENNES & MAURITZ LP,

        Defendant.

---

ORDER

---

A jury trial is scheduled to commence on February 2, 2016, regarding plaintiff Thomas E. Ott, Jr.'s claim that defendant H & M Hennes & Mauritz LP violated the Americans with Disabilities Act when it failed to provide Ott, a former employee, with a sign language interpreter during a September 19, 2011 confrontation with managers. Currently before the court is H&M's motion in limine to exclude Ott's expert witness, Daniel Millikin, from testifying at trial. (ECF No. 41.)

The court is the gatekeeper when it comes to expert testimony. *C.W. v. Textron, Inc.*, 807 F.3d 827, ___, 2015 U.S. App. LEXIS 15076, 14 (7th Cir. 2015). In exercising this function, the court is not concerned with the correctness of the expert's conclusion, but rather the soundness and care the expert utilized in reaching his opinion. *Id.* (quoting

*Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013)). Not only must the expert's testimony be reliable but it also must be relevant and assist the trier of fact. *Id.* (citing Fed. R. Evid. 702); *see also Stuhlmacher v. Home Depot U.S.A., Inc.*, 774 F.3d 405, 409 (7th Cir. 2014) ("The Supreme Court in *Daubert* interpreted Rule 702 to require that district courts, prior to admitting expert testimony, determine whether the testimony is reliable and whether it will assist the trier of fact in determining some fact that is at issue.") In assessing reliability, the court's inquiry is flexible and the court is afforded broad latitude in deciding how to assess reliability. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999).

Ott contends that Millikin "would assist the jury in understanding evidence about lip reading and sign language." (ECF No. 53 at 1.) Millikin, who "is currently the Director for the Office for the Deaf and Hard of Hearing, Bureau of Aging and Disability Resources, Wisconsin Department of Health Services," "would be able to explain the various accommodations to the jury and opine on why the requested accommodation of a sign language interpreter was reasonable at the time it was made." (ECF No. 53 at 2.) Specifically, Ott proffers that

> Millikin is expected to testify that (1) when communicating "complex or critical information" using an "accommodation of communication" is necessary to ensure the person with hearing loss understands the information, (2) when a person who lip reads cannot see the speaker's face that the person will miss much of what has been said during the conversation, (3) it would be notoriously difficult for a person with "hearing loss and limited lip-reading skills" to be able to acquire, process and understand complex information in a retail environment, and (4)

> Plaintiff would need sign language interpreting or real-time captioning services in one-on one meetings.

(ECF No. 53 at 2.)

H&M argues that Millikin should be excluded because "he has failed to engage in any scientific or analytic methodology in reaching his conclusions and has only performed a cursory review of the relevant facts." (ECF No. 45 at 7.) Consequently, Millikin's testimony is unreliable. H&M further argues that permitting Millikin to testify as an expert would be prejudicial. (ECF No. 45 at 7.)

As the court noted in its prior order addressing Ott's motion in limine, the primary question that the jury will need to resolve is whether Ott requested a sign language interpreter during the September 19 confrontation. Only if the jury answers that question in the affirmative will it be necessary for the jury to then determine whether the request for an interpreter was reasonable, whether Ott suffered damages as a result of H&M's failure to provide an interpreter, and, depending upon the evidence adduced at trial, whether H&M's refusal to provide an interpreter was done maliciously.

Millikin's proffered testimony all relates to the ability of a deaf person to understand communication. But the jury will not have to decide whether Ott understood what his managers said. The question is whether H&M's managers (mis)understood Ott. Ott has not indicated that Millikin is going to testify as to a how a deaf person might be understood (or misunderstood) by others. It appears that the

3

conclusions proffered in Millikin's report are relevant only to issues that the court resolved at summary judgment. Consequently, the court finds that Ott has failed to demonstrate that Millikin's proffered expert testimony is relevant to any issue to be decided by the jury.

The court also finds that Ott has failed to demonstrate that Millikin is competent to testify as an expert under Fed. R. Evid. 702. Millikin is an attorney by training. (ECF No. 45-1, (B)(iv).) Other than stating by whom he is employed and what his title is, Ott provides no information about his training, experience, or what specifically he does in his current position. What we do know is that he has never testified as an expert before (ECF No. 4-1 at (b)(v)) and has not authored any publications in the last decade (ECF No. 4-1, (b)(iv)). Aside from his current position, which he has held for about two years (ECF No. 45-1 at 4), he worked for three-and-a-half years as a Director of Student Life at the National Technical Institute for the Deaf and taught high school for the deaf for a year-and-a-half. (ECF No. 4-1, (b)(iv). There is no indication that Millikin has the knowledge, skill, experience, training, or education to opine as to how a deaf person might be misunderstood by a hearing person.

It is also not clear upon what Millikin bases his opinions. The portions of his report where he discusses means by which deaf persons communicate spans slightly more than a page and is unsupported by any authority. The court has been provided with an email from Millikin where he apparently quotes excerpts from various websites

4

from the Wisconsin Office for the Deaf and Hard of Hearing (the office Millikin heads), the National Association of the Deaf, the Minnesota Department of Human Services, the Hearing Loss Association of America, and the Association of Late-Deafened Adults consisting of tips for communicating with a deaf person (ECF No. 45-1 at 9, 10-11, 13), tips for a deaf person communicating with a hearing person (ECF No. 45-1 at 12), and comments on lip reading (ECF No. 45-1 at 9-10) or the use of notes as communication measures (ECF No. 45-1 at 10). Many of the statements appear to be mere common sense, for example, when communicating with a person who relies upon lip reading, "[m]ake sure your face and mouth are clearly visible". (ECF No. 45-1 at 11.) An expert is unnecessary for points such as these. Other statements, such as "[o]nly 25% of the English language is visible on the lips," or "[o]n average, even the most skilled lipreaders understand only 25 percent of what is said to them,"(ECF No. 45-1 at 9), admittedly require expert testimony, but the court has been offered no information as to where these figures came from. The fact that a statement appeared on the website of the organization Millikin heads or an advocacy group is not sufficient to render the opinion reliable under *Daubert*.

Even if the ability of a deaf person to understand verbal communications was relevant, it would be Ott's specific abilities to understand, not those of deaf persons in general, that would be relevant. But Millikin never met Ott, never spoke to him, and made no assessment of his particular abilities. This is especially significant in light of

the fact that Ott professed an ability to understand 50 to 75 percent of verbal communication (ECF No. 1, ¶ 11), significantly above the 25 to 30 percent Millikin stated is the ability of "[e]ven the best lip-reader" (ECF No. 45-1 at 5; *see also* ECF No. 45-1 at 9). But Millikin makes no effort to explain how Ott comprehending so much more than even the best lip-reader affects his opinions.

Moreover, some of Millikin's conclusions were by his own admission based upon his speculation about what Ott's job entailed. For example, he said that Ott was employed in a fast paced and, at times, complex retail setting which required constant communication and follow-up with numerous individuals (meetings with sales associates, one-on-one meetings with managers and customers) regarding store policies, events and news, new sales instructions, providing training to new sales associates. (ECF No. 45-1 at 6.) When asked how he knew this, Millikin testified that he got it from the complaint. (ECF No. 45-2 at 19.) But this information is not in the complaint, nor could it be fairly inferred from what *is* said in the complaint. At best, Millikin's opinion was based on what he *thought* would be the responsibilities of a person in a retail position similar to that held by Ott. But there is no indication that Millikin was qualified to offer this speculation. As such, a key component of his opinions lacks a sufficient basis. *See Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) (quoting *Finn v. Warren County*, 768 F.3d 441, 452 (6th Cir. 2014) ("the 'knowledge' requirement of Rule 702

requires the expert to provide more than a subjective belief or unsupported speculation.")

H&M's motion in limine to preclude Millikin from testifying as an expert is **granted**. Ott has failed to demonstrate that Millikin's testimony would be relevant. Even if relevant, Ott has failed to demonstrate that Millikin is competent to testify as an expert with respect to his proffered opinions or that those opinions are reliable.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin this 22nd day of January, 2016.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge